# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KP-00279-SCT

*LONIA A. WRIGHT, a /k/a LONNIE A. WRIGHT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/11/92 |
| TRIAL JUDGE: | HON. ISADORE W. PATRICK, JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | G. GILMORE MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/31/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/3/99 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. In this appeal from a conviction of kidnapping, armed robbery, and sexual battery we must determine whether a defendant's statements made after arrest, which were not elicited by police action, should have been suppressed on the grounds that the defendant was under the influence of a controlled substance and therefore any waiver of Miranda rights was not voluntarily, knowledgeably and intelligently given. We must also determine whether a witness should be called to testify before the jury even though the court has been informed that the witness will only invoke the Fifth Amendment right against self incrimination. We conclude that where statements are made voluntarily and are not the product of police action the fact that the defendant is under the influence of a controlled substance is irrelevant and the statements are admissible. We further conclude that the trial court did not abuse its discretion by refusing to allow an irrelevant witness to be called to the stand, who would have refused to answer questions on Fifth Amendment grounds. Therefore, we affirm the circuit court's judgment.

**I.**

¶2. On or about October 8, 1991, the appellant Lonia Wright entered Donna Price's place of employment and kidnapped her at gunpoint. Over several hours, Wright forced Price to disrobe, perform oral sex on him and smoke crack-cocaine with him. He also forcefully performed oral sex on her. Wright admittedly was smoking crack-cocaine throughout the kidnapping.

¶3. After driving to his home and forcing Price to perform fellatio in a nearby shack, Wright took Price through the woods at gunpoint to the home of Alma Cash. Ms. Cash was in her car and about to go to the bank. Brandishing the gun in Ms. Cash's face, Wright forced her out of the car and made Price get in with him. He then fled the scene. Shortly after stealing the car, members of the Vicksburg Police Department apprehended Wright. At the time of Wright's capture he held a briefcase that contained a crack pipe, Price's bra and papers. A .38 caliber handgun was also found close to the area where Wright was placed under arrest.

¶4. After being ***Mirandized*** and placed in a patrol car, Wright asked for Leroy Williams, an officer with the Sheriff's Department. He told Williams that the crack-cocaine had him doing crazy things and that he had messed up. The conversation with Williams did not last five minutes. On the way to the police station, Wright voluntarily stated that he did not know why he took the lady, that he had embarrassed his family and that he was wrong and needed help.

¶5. Wright was subsequently indicted for kidnapping, armed robbery and sexual battery. He testified in his own defense, contending that he knew Price before the incident and that she freely accompanied him to his home to smoke crack-cocaine. He denied having any sexual relations with Price. He also denied pulling the gun on Alma Cash to take her car, because, according to Wright, Cash was not in her car when he stole it.

¶6. Wright attempted to call Lorinzo Hull to the stand; however, Hull's counsel informed the trial judge that Hull did not wish to testify and would invoke his Fifth Amendment privilege against self-incrimination. Wright proffered that Hull would testify that he saw Wright and a white female one day in the "Marcus Bottom" community (high crime and drug-infested area) and that Wright bought drugs. According to counsel for Wright, Hull would have also testified that the white female did not appear to be under any duress. The trial court did not allow Hull to come to the stand and assert his right before the jury because (1) Hull could not pinpoint on what day he saw Wright and a white female -- indicating that it could have been any white female therefore making the testimony irrelevant and (2) the court felt it was more prejudicial than probative.

¶7. The jury found Wright guilty of kidnapping and sentenced him to life imprisonment. He was also found guilty of armed robbery and sentenced to another term of life. The jury further found Wright guilty of sexual battery, and the trial court sentenced him to twenty-five years imprisonment to be served concurrently with the kidnapping sentence which runs consecutively to the armed robbery sentence.

¶8. Aggrieved by the convictions and sentences, Wright appealed to this Court for relief.

## II.

### a.

¶9. In his first assignment of error, Wright argues the trial court erred in overruling his motion to suppress the statements he made shortly after he was arrested. One statement he takes issue with was made to

Deputy Sheriff Crevitt who transported Wright to jail. According to Crevitt, he did not ask Wright any questions or even talk to him. Still, Wright stated, "I don't know why I did this. I don't know why I took that lady. I've embarrassed my whole family. I guess it was the crack." Prior to being transported to jail, another officer testified that Wright asked to speak with him. Officer Leroy Williams approached the patrol car and immediately told Wright that he (Wright) did not have to talk to him. Wright continued to talk to Williams, stating "LeRoy, I've got to talk to somebody. This thing is killing me. I know I've done wrong. I'm in trouble, big time trouble, with what I've done today. I'm sorry, but I've got to get some help."

¶10. The State asserts that Wright failed to raise his "cocaine confusion defense" with the trial court regarding the admissibility of his statements and therefore has waived this issue, citing *Russell v. State*, 607 So. 2d 1107, 1117 (Miss. 1992). The State further contends that Wright's statements were properly admitted into trial because they were "voluntarily given" after he was *Mirandized*.

¶11. The standard of reviewing the admission of a confession is well-settled. "'Determining whether a confession is admissible is a finding of fact which is not disturbed unless the trial judge applied an incorrect legal standard, committed manifest error, or the decision was contrary to the overwhelming weight of the evidence.'"*Hunt v. State*, 687 So. 2d 1154, 1159 (Miss. 1996) (quoting *Lee v. State*, 631 So. 2d 824, 826 (Miss. 1994)). The admission of a drug-induced confession would clearly violate a defendant's right against self-incrimination guaranteed by the U.S. Constitution and the Mississippi Constitution. *Malloy v. Hogan*, 378 U.S. 1, 8 (1964). However, a person's Miranda rights are not triggered by a voluntary statement. *Hunt*, 687 So. 2d at 1159 (citing *Miranda v. Arizona*, 384 U.S. 436, 477-78 (1966)). In *Pierre v. State*, 607 So. 2d 43 (Miss. 1992), this Court found no impropriety where an accused made an inculpatory statement while in custody that was not in response to custodial interrogation or any police action designed to elicit an incriminating response. This Court noted that the Fifth Amendment did not impose on the trial court any need to ascertain voluntariness, knowledge, and intelligence of waiver under those circumstances. *Pierre*, 607 So. 2d at 52.

¶12. This is the case here. Wright made statements to Officers Crevitt and Williams voluntarily. The officers had not questioned him. In fact, they were not even carrying on a conversation with him when he made the statements. Therefore the statements were fully admissible. Concerning his claim that he was high on crack cocaine and therefore unable to freely and voluntarily make the statements, again it is submitted Wright was not being interrogated. Thus, whether he was high on drugs is not of consequence because he volunteered the statements. As such, this assignment of error lacks merit and does not entitle Wright to any relief.

**b.**

¶13. In his second assignment of error, Wright contends, that the trial court abused its discretion in not allowing him to call Lorinzo Hull as a witness, because a defendant has the right of compulsory process to call a witness even if that witness refuses to answer any questions by asserting Fifth Amendment privilege and because of the relevancy of Hull's testimony. We agree that a defendant has a right of compulsory process regarding calling a witness to the stand to give testimony, including those who refuse to testify, because a jury can be instructed not to draw inferences from a witness asserting Fifth Amendment privileges. *Stewart v. State*, 355 So. 2d 94, 95-96 (Miss. 1978)( *citing United States v. Johnson*, 488 F.2d 1207 (1st Cir. 1973)). Hull's testimony is legally irrelevant, because he provides no time frame of his supposed rendezvous with Wright and the mystery white woman. Hull, through his counsel, refused to testify. The record reflects that Hull was unable to provide a date when he supposedly had observed Wright

in Marcus Bottom with a white female during a sale of cocaine by Hull to Wright, nor could he identify the while female as being the victim in this case. Therefore, Hull's testimony, even had he agreed to testify, was not relevant in the case at bar. An additional problem which concerned the trial judge was Hull being in jail, charged with two counts of selling cocaine and being questioned in this case about supposedly selling cocaine to Wright during this particular occasion which involved a kidnapping and sexual assault of a white female victim, not a sale of cocaine for which Wright was not charged. The trial judge believed that to allow this testimony was more prejudicial than probative, and refused to allow Hull to be required to plead his Fifth Amendment rights in the presence of the jury.

¶14. Ultimately, Wright's counsel agreed to the procedure suggested by the trial judge-- that he would allow Hull to be called to the witness stand, that Hull's counsel could claim Fifth Amendment rights, and that Hull's proffered testimony could be presented out of the presence of the jury. In response to the trial judge's suggestion, Wright's counsel stated, "Okay. Okay. That's fine. I can do that now." Counsel then stated what he believed to be Hull's testimony. The proffered testimony did not indicate a specific date, or even an approximate time frame when Hull supposedly observed a white female with Wright in Marcus Bottom, nor did it claim to identify the white female as the victim in this case. As stated, Hull's testimony would have been that the incident occurred "any time and with any white female." Thus, Hull's proffered testimony was clearly not relevant in this case.

¶15. Considering the issue of relevancy and admissibility regarding failure to establish time frames for supposed factual events, in **Bounds v. State**, 688 So. 2d 1362, 1370-71 (Miss. 1997) this Court stated, "The only mention of a time frame in front of the jury was vague statements by Guin like "one night" and "one time." There is no establishment of an exact or even an approximate time frame. . . .The lack of at least an approximate time frame completely ignores Mississippi Rules of Evidence 401 and 403 as to relevancy and misleading the jury". *Id.* This is exactly what occurred in the case at bar. Wright failed to establish an "exact or even an approximate time frame" for the so-called 'drug buy' between Hull and Wright in Marcus Bottom. Even more convincing here is that Hull could not establish the identity of the white woman who was supposedly with Wright. Thus, it could have been any white woman on any occasion. In **Bounds**, the trial judge specifically stated, "**I need a time frame because that's also relevant."**, *Bounds,* 688 So. 2d at 1370. (emphasis in original). Here, the trial judge also correctly required a time frame in order for the evidence to be relevant and thus admissible. Wright wholly failed to produce so much as an approximate time frame, much less failed to establish an exact time frame. This Court has also stated, "It is true that a determination of the relevance of evidence is left to the sound discretion of the trial judge whose determination will not be reversed in the absence of clear abuse." **Bounds** at 1369 (*citing **Watts v. State***, 635 So. 2d 1364, 1367 (Miss. 1994), *citing **Lambert v. State***, 462 So.2d 308, 313 (Miss. 1984))). Hull's proffered testimony was not relevant and the trial court did not abuse its discretion in refusing to allow it.

## CONCLUSION

¶16. The trial court properly denied Wright's motion to suppress his statements and properly refused to allow Wright to call an irrelevant witness to the stand, who planned to assert his Fifth Amendment rights anyway. Therefore, the judgment of the circuit court is affirmed.

¶17. **COUNT I: CONVICTION OF KIDNAPPING AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF**

**CORRECTIONS AFFIRMED. COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT III: CONVICTION OF ARMED ROBBERY AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONCURRENTLY WITH THE SENTENCE IN COUNT I. SENTENCE IN COUNT III SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT II.**

**PRATHER, C.J., ROBERTS, MILLS AND WALLER, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN AND PITTMAN, P.JJ., AND McRAE, J.**

**BANKS, JUSTICE, DISSENTING:**

¶18. Because I disagree with the majority's finding that the trial court did not abuse its discretion in refusing to allow Wright to call Lorinzo Hull as a witness, I dissent.

¶19. The majority first finds that Wright "waived this issue by agreeing to the procedure suggested by the trial judge." The majority fails to state exactly what procedure Wright was to have agreed to. However, there is ample evidence that Wright objected to not being able to fully question Hull regarding whether he had seen Wright in the Marcus Bottom in the company of a white woman. In response to the trial court's ruling that Wright would not be allowed to call Hull as a witness, the defense stated that "Mr. Hull has the right to decline to answer a particular question if he believes or if counsel advises him that it may incriminate him. I don't believe that he has a right to refuse all questions before they're asked is what I'm saying." This in no way indicates that the defense was in agreement with the trial court's ruling.

¶20. Secondly, the majority finds that Hull's testimony was not legally relevant. The trial court's ruling was based upon the fact that (1) the assertion of the privilege before the jury would be more prejudicial than probative; and (2) Hull allegedly would not testify conclusively that the date he saw Wright in Marcus Bottom was the same date as the instant kidnaping and sexual battery. In *Stewart v. State*, 355 So. 2d 94, 96 (Miss. 1978), this Court held a trial court's refusal to allow a witness to be called to the stand by the defendant and questioned in the presence of the jury -- even though it was known the witness would refuse to answer "most" questions propounded to him on Fifth Amendment grounds -- was reversible error. *See also Smith v. State*, 527 So. 2d 660, 664 (Miss. 1988) ("Had the trial judge refused to allow Smith to put Ms. Wilson on the stand and force her to invoke her Fifth Amendment right in front of the jury, reversible error would have been committed") (citing *Hall v. State*, 490 So. 2d 858 (Miss. 1986); *Coleman v. State*, 388 So. 2d 157 (Miss. 1980); *Stewart v. State*, 355 So. 2d 94 (Miss. 1978)). When a witness refuses to answer any questions on Fifth Amendment grounds, the jury can be instructed not to draw any inferences from the witness' assertion of his Fifth Amendment privilege, thereby removing the taint of prejudice. *Stewart v. State*, 355 So. 2d at 95-96 (citing *United States v. Johnson*, 488 F.2d 1207 (1st Cir. 1973)). Therefore, Wright had the right to call Hull to the stand regardless of whether he would assert his Fifth Amendment privilege.

¶21. Hull's proffered testimony was relevant even assuming he could not pinpoint the exact date he saw (or sold drugs to) Wright in the Marcus Bottom neighborhood. Wright testified in his own defense that the victim consented to go with him and smoke crack-cocaine. His brother likewise testified that Ms. Price did not appear under duress. This testimony made up a viable consent defense, and Hull's testimony went directly to the consent issue. Additionally, it remains unknown whether Hull actually knew the date or could be sufficiently specific about a time period in which he saw Wright in Marcus Bottom. The record shows that Wright's attorney, not Hull, thought Hull could not specify the date he saw Wright in the Bottom. Thus, the trial court's emphasis on this lack of information on the part of Wright's attorney should not have been dispositive in his determination. Hull had given a statement sufficient to allow him to have been called to the stand to examine the extent of his knowledge about the facts of the case. Because the trial court erred in refusing to allow Wright to call a witness to the stand who planned to assert his Fifth Amendment rights, I would reverse this matter and remand for further proceedings.

**SULLIVAN AND PITTMAN, P.JJ., AND McRAE, J., JOIN THIS OPINION.**