# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 95-CT-00667-SCT

*TERRY BUTLER*

*v.*

*STATE OF MISSISSIPPI*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/18/95 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOLENE M. LOWRY |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 11/13/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/4/97 |

**EN BANC.**

**PITTMAN, JUSTICE, FOR THE COURT:**

¶1. This matter is before the Court upon the grant of Butler's petition for writ of certiorari following the decision of the Court of Appeals affirming Butler's conviction in the Circuit Court of Hinds County for manslaughter.

### FACTS

¶2. On September 3, 1994, at about 1:00 a.m., Morris Duane Jones drove his motorcycle near the intersection of Summer Street and Silas Brown Street in Jackson, Mississippi. He stopped by a group of young males who had gathered on Summer Street. Testimony revealed that Jones wanted to purchase crack cocaine. Butler was allegedly a member of this group. Also in the group was fifteen-year-old Jessie Banks a/k/a "Man"; seventeen-year-old Michael Harper; and seventeen-year-old Marvin Travis Hayes. When Jones was leaving the scene, the group discovered that Jones had

shorted them in paying for the cocaine. Either Butler or Harper shot Jones twice in the left side, with Harper's gun, as Jones drove off. Jones lost control of the motorcycle which jumped the curb and wrecked. Jones died as a result of the gun shot wound.

¶3. According to testimony, Butler ran away and Banks and Harper went to the nearby home of Bernice Shoulders and asked her to call an ambulance. Harper and Banks then waited on Shoulders' porch.

¶4. Butler and Harper were jointly indicted for the murder of Jones. Harper agreed to testify against Butler in exchange for a reduction in the charge from murder to manslaughter, to which he entered a plea of guilty.

¶5. At Butler's trial, both Harper and Banks testified that Butler asked for Harper's gun and fired five shots in the direction of the departing Jones. In his defense, Butler offered the testimony of his mother, two sisters and a friend, who testified that he was passed out on the front room floor of his parents' home after losing a bet with his stepfather about chugging a pint of whiskey. Butler called two other witnesses to testify that he was not with the group when Jones was shot, but both declined to testify claiming their Fifth Amendment right against self-incrimination. They were under indictment for unrelated charges at that time. Butler attempted to introduce the affidavit of one of these witnesses, Marvin Hayes, on the premise that the witness was unavailable since he refused to testify. While the trial court found Hayes was unavailable, it refused to admit the affidavit.

## Issues

¶6. The Court of Appeals affirmed the trial court's judgment. On appeal Butler raised six issues, all of which were reasserted as issues to be reviewed on certiorari. These issues, as phrased by Butler, are:

1. Whether the trial court erred by not requiring the State to provide racially-neutral grounds for using all of its jury challenges against members of the African American Race?

2. Whether the incompetent, uncorroborated, unreasonable, improbable, self-contradictory and substantially impeached testimony of two accomplices properly supported the verdict in this case?

3. Was the jury properly instructed on reasonable doubt?

4. Whether the verdict was a product of duress?

5. Should the Court have admitted the affidavit of Marvin Hayes?

6. Did the court err by limiting defense counsel's closing argument?

¶7. Because the first four issues appear to this Court to have been correctly and adequately considered by the Court of Appeals, this opinion will focus on two issues which will be addressed by this Court.

## Discussion

**Issue No. 5. Whether the Court of Appeals erred in ruling that the trial court properly refused to allow the use of an affidavit from Marvin Hayes, and properly refused to require Hayes to testify.**

¶8. Marvin Hayes was at the scene of the shooting and among the group conducting the drug sale. Before Butler's trial, he employed Chris Ganner to represent him on unrelated indictments. Ganner did, however, have Hayes provide Butler's attorney with an affidavit regarding the incident. Ganner said the purpose was to assist counsel for Butler and the District Attorney's office in the prosecution of Harper, co-defendant to Butler. That affidavit declared:

> I then saw Michael Harper pull out a pistol and shoot 4 or 5 times in the direction of the white male. The white male appeared to be hit with these shots and wrecked his motorcycle.

> I did not see Terry Butler a/k/a "Pedru" on the scene described above that evening anywhere. Terry Butler did not shoot the white male and was not involved in this shooting in any way whatsoever.

¶9. At trial, Hayes was called by Butler but refused to testify, pleading the Fifth Amendment. The trial court accepted the plea and did not compel his testimony. Thereafter, the affidavit was offered but was excluded.

¶10. Butler urges that in affirming the trial judge's refusal to require Hayes to testify, the Court of Appeals decided the matter contrary to this Court's decision in *Hentz v. State*, 496 So. 2d 668 (Miss. 1986). While *Hentz* stands for the proposition that the Fifth Amendment privilege is not available unless the witness is in danger of prosecution, Hentz had pled guilty to participation in the murder of Williamson. He then filed for post-conviction relief and, while this was pending, testified in the perjury trial of John Gullet. Gullett, who was a cell mate of Hentz and his brother, Roger Hentz, had been indicted for perjury regarding his testimony in one of the murder trials involving the Hentz brothers. Prior to Hentz taking the stand, he was instructed by the trial court as to the hazards of appearing as a witness, including possible contempt. The trial court appointed counsel to advise Hentz. In spite of counsel's advice to the contrary, Hentz did testify. Hentz stated that his brother, Roger, had lied numerous times but had also said that he had told Gullett that he [Roger] had killed Williamson. This prompted the State to ask numerous questions about the murder of Williamson. As to this inquiry, Hentz refused to testify. Upon this refusal to testify, the court did advise Hentz that he was in contempt of court and imposed punishment for six incidents of contempt.

¶11. Hentz complained that he was entitled to assert the Fifth Amendment privilege because his responses might expose him to criminal prosecution for the murder. Not only had Hentz pled guilty to that crime, this Court found that when he voluntarily took the stand, he waived his right to remain silent and that the court properly required him to answer relevant questions.[1]

¶12. In the present case, Hayes, on the other hand, advised the trial court that he planned to assert his privilege, was placed on the stand, and refused to answer beyond basic introductory questions. Other than acknowledging that he knew Butler and Harper, Hayes refused to answer any further questions. Hayes' position was that he did not want to incriminate himself as he was present at the shooting and was under indictment for unrelated charges. The trial also developed testimony that the entire group standing on the street was selling drugs. Under the circumstances, it was plausible that Hayes'

presence at the scene of the crime could have resulted in charges being brought against him directly relating to the events of that night. Further, the trial court found that Hayes was subject to prosecution for other crimes that might be revealed in his testimony and refused to require him to testify. This Court in *Smith v. State*, 527 So. 2d 660, 664 (Miss. 1988), stated that while one has the right to call witnesses, he does not have the right to force the witness to testify to matters which might be incriminating. The trial court did not err in refusing to require Hayes to testify.

¶13. Once the trial court declared Hayes unavailable, Butler's counsel tried to have Hayes' affidavit admitted under Miss. R. Evid. 804(b)(1) *Former Testimony*, (3) *Statement Against Interest*, and (5) *Other Exceptions*. The trial court ruled that it could not be admitted under the cited provisions of Miss. R. Evid. 804(b). On appeal, Butler raised only admission under Miss. R. Evid. 804(b)(5), *Other Exceptions,* which provides:

> **(b) Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (5) *Other Exceptions*. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

¶14. In *Cummins v. State*, 515 So. 2d 869 (Miss. 1987), *overruled on other grounds by Morgan v. State*, No. 93-KA-00225-SCT (Miss. June 12, 1997), this Court articulated five conditions for admissibility of evidence under Rule 804(b)(5).

> 1. The adverse party must have notice of intended use,
>
> 2. The statement must have circumstantial guarantees of trustworthiness,
>
> 3. It must be offered as evidence of a material fact,
>
> 4. It must be more probative than other evidence, and
>
> 5. The purpose of the rules and the interests of justice must best be served by admitting the statement.

*Id.* At 873. No issue has been raised as to notice to the State of the intended use of the affidavit, and the trial judge found that the affidavit was evidence of a material fact. In the rule and in *Cummins*, these requirements are stated conjunctively, and they must all be met in order to allow the admission of the hearsay evidence. The trial judge found that the Hayes affidavit did not have greater probative

value than other evidence, and that the interest of justice would not be served by its use. His conclusion that the interest of justice would not be served was apparently drawn from the fact that the State would not have an opportunity of cross-examination. Rulings as to the admissibility of evidence should be reversed only if the judge is found to have abused his discretion. *Parker v. State*, 606 So. 2d 1132, 1136 (Miss. 1992). The Court of Appeals concluded that the judge here did not abuse his discretion applying these conditions.

¶15. There can be no doubt that the testimony of Hayes was vital to Butler's defense. His was the only testimony from one present that Harper, not Butler, shot Jones. Hayes' affidavit was given under oath and in the presence and with the assistance of his own attorney. It placed him at the scene of a crime involving the sale of drugs and was given while he was under indictment for a separate unrelated drug crime. Furthermore, the judge had ruled immediately before dealing with the affidavit that his testimony on the same subject was sufficiently contrary to his interest to support a claim of Fifth Amendment privilege. However, both the trial court and the Court of Appeals found that the statement was not against his interest as it did not implicate him in the murder of Jones.

¶16. The trial court and the Court of Appeals both concluded that the affidavit was not more probative on the point for which it was offered than other evidence because Butler's family and a friend had already testified regarding his whereabouts. However, the affidavit is the eyewitness impression of Hayes, who was at the scene of the crime, and he is the only one who could testify as to his impression. It was the only evidence from one at the scene contradicting that of Harper and Banks. The other alibi witnesses were not present during the shooting and could not testify that Harper shot Jones.

¶17. In arguing against the admissibility of the affidavit, the State urged the interest of justice was frustrated because the State could not cross-examine the affidavit, and the judge accepted this argument. It is Butler's position that the State, having two witnesses, Harper and Banks, who testified that Butler did the shooting, held the possibility of being prosecuted over the head of Hayes, thus effectively sealing his lips. The Court of Appeals observed that the issue of cross-examination was the most persuasive single issue to the trial court in its weighing the interests of justice factor.

¶18. Thus, Butler was placed in an impossible position. Hayes refused to testify for fear that his testimony would subject him to prosecution by the State. He thereby became, as the judge ruled, an unavailable witness. Then the affidavit was excluded because the State was without the opportunity to cross-examine Hayes. While we recognize the State's discretion in granting immunity, we also observe that the State effectively controlled the availability of Hayes' testimony. It is well established by prior decision of this Court that the right of confrontation under the Sixth Amendment of the United States Constitution and the Mississippi Constitution does not inure to the benefit of the State in prosecuting criminal cases. In *Parker*, 606 So. 2d at 1139, the Court stated clearly that "[t]here [is] no counterpart to the confrontation clause for the benefit of the State . . . ."

¶19. Upon careful review, we must conclude that Rule 804(b)(5) was misapplied and that the exclusion of the affidavit was error and requires that the case be reversed and remanded for a new trial.

>    **Issue No. 6. Whether the Court of Appeals erred in ruling that the trial court properly limited the defendant's closing arguments on conclusions as to inferences which could**

**have been drawn from the evidence.**

¶20. In his closing argument at trial, Butler's counsel referred to Hayes and Steve Earl Williams pleading the Fifth Amendment. The argument, objection and ruling went as follows:

BY MR. HOLMES:

We had asked two witnesses to testify to you who took the 5th amendment. The first was Marvin Hayes and the second was an individual named Steve Earl Williams. Now, both of those -- well, Marvin Hayes, his name came up during the testimony of Michael Harper and also during the testimony of Jessie Banks. He was placed on the scene.

He was advised by his lawyer not to testify, and you observed that in court right before you. He also indicated that previously he had indicated to me that he was going to testify and that he had changed his mind --

BY MR. PETERS:

To which we object.

BY THE COURT:

Sustained.

BY MR. HOMES:

You can, I think, consistent with the Court's instructions, draw whatever reasonable inference that you want to from these individuals asserting their 5th amendment not to testify. The inference would be that -- I suggest to you that whatever they had to say somehow placed them on the scene.

BY MR. PETERS:

May it please the Court, we object to this entire line of argument.

BY THE COURT:

Sustained.

¶21. In Mississippi "[a] criminal defendant must be allowed to call witnesses to the stand even though the defendant is aware that the witness, if called, will invoke the Fifth Amendment to every question." *Balfour v. State,* 598 So. 2d 731, 751 (Miss. 1992); *Hall v. State,* 490 So. 2d 858, 859 (Miss. 1986) ; *Coleman v. State*, 388 So. 2d 157, 159 (Miss. 1980). It is also true that this Court has held that the jury is entitled to draw all reasonable inferences from the relevant evidence presented, and the trial lawyer is allowed to argue those inferences and suggest reasonable conclusions to be drawn. *Williams v. State*, 595 So. 2d 1299, 1309 (Miss. 1992) (*citing* *Nelms & Blum Co. v. Fink,* 159 Miss. 372, 131 So. 817 (1930)). Here, the jury heard Hayes testify that he had first decided to testify, but later changed his mind, and they heard him, as they were entitled to do, invoke the privilege. However, the Court of Appeals concluded that pointing this out to the jury was contrary to federal

precedent, *citing Grunewald v. United States*, 353 U.S. 391 (1957). The Court of Appeals is mistaken in its reliance on *Grunewald*, which did not address the question of comments by counsel to the jury. There one of the defendants had previously refused to testify before a grand jury, claiming his Fifth Amendment privilege. At trial he answered similar questions consistent with innocence, and the Government was allowed to cross-examine him on his prior claim of the privilege. Justice Harlen, for the majority, held this to be error analyzing the issue as one of whether a refusal to testify was a prior inconsistent statement bearing on the credibility of the defendant's testimony at trial and concluded that it was not. The Court said: "We need not tarry long to reiterate our view that, as the two courts below held, no implication of guilt could be drawn from Halperin's invocation of his Fifth Amendment privilege . . ." *Grunewald*, 353 U.S. at 421. Halperin was a defendant, not merely a witness. Further, in the present case, Butler's comments did not suggest an implication of guilt on the part of Hayes when he, as a fact witness in Butler's prosecution, refused to testify.

¶22. The problem with Butler's effort to elicit a favorable inference from Hayes' claim of the privilege is the fact that Hayes' refusal to testify is not relevant evidence. Rule of Evidence 401 defines relevant evidence. "'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss. R. Evid. 401.

¶23. It was on this basis that Michigan, under its procedure, refused to allow the State to question a witness before the jury when the witness was known to intend to claim the privilege. *People v. Diaz*, 296 N.W. 2d 337, 341 (Mich. Ct. App. 1980). This rule likewise is applied in the Federal system, and those courts have held that inferences may not be drawn from the claim of the privilege by a witness. "'Neither side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with questions that have been put to him.'" *United States v. Doddington*, 822 F. 2d 818, 822 (8th Cir. 1987) (*quoting United States v. Johnson*, 488 F. 2d 1206, 1211 (1st Cir. 1973)).[(2)]

¶24. While a criminal defendant in Mississippi is allowed to call a witness to testify even knowing that the witness will claim the privilege, *Balfour*, 589 So. 2d at 751, that does not lead to the conclusion that the witness' claim of the privilege is relevant evidence upon which the defendant may argue inferences and conclusions to the jury. Indeed, in *Stewart v. State*, 355 So. 2d 94 (Miss. 1978), in reversing the trial court which denied the defendant the opportunity to call a witness before the jury when the witness had claimed his privilege, the Court said:

> We are aware that allowing Brown to be questioned in the presence of the jury may open the door for defense counsel to attempt to impeach Brown by asking questions he knows Brown will refuse to answer and by inference get inadmissible evidence before the jury. However, we are of the opinion that the potential for a miscarriage of justice is minimal, *particularly in view of the fact that the jury can be instructed not to draw any inferences from the witness' assertion of his Fifth Amendment privilege*.

*Stewart* at 95 (emphasis added). In view of the Court's holding in *Stewart,* the trial court committed no error in limiting Butler's closing argument.

## Conclusion

¶25. Hayes' affidavit was crucial to Butler's defense. No complaint of surprise was heard from the State, and Butler legitimately attempted to elicit Banks' testimony from the witness stand. The witness' claim of the Fifth Amendment privilege was justified only by his fear of prosecution by the State. Although the State was not required to grant immunity, under the circumstances, its inability to cross-examine should not be viewed as barring the use of the witness' prior affidavit as contrary to the interest of justice. As to the trial court's limitation on Butler's counsel's argument, while it may seem incongruous to hold that the defense may examine a witness who it knows will claim the privilege and hold at the same time that the jury may not draw inferences from that claim of privilege, such is the state of the law in view of *Balfour* and *Stewart*.

¶26. The decision of the Court of Appeals is reversed on the affidavit issue and the case is remanded for a new trial.

¶27. **REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, ROBERTS AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. SMITH, J., NOT PARTICIPATING.**

1. Justice Prather, joined by Justices Dan Lee, Robertson and Sullivan, dissented from the decision in *Hentz*. Because Hentz was pursuing post-conviction relief from his guilty plea, Justice Prather urged that he remained at risk to prosecution.

2. The Federal rule in civil cases as to both examining the witness claiming the privilege before the jury and as to inferences which may be drawn is different. In civil cases it has been held that the witness may be examined and that the jury is entitled to draw inferences from his failure to give testimony. *See Rad Services, Inc. v. Aetna Cas. and Sur. Co.*, 808 F. 2d 271, 277 (3rd Cir. 1986); *Brink's Inc. v. City of New York*, 717 F. 2d 700, 702-715 (2nd Cir. 1983). The application of the rule in civil cases has not yet come before this Court.