566 So.2d 1201 (1990)
Granville MURPHY, Jr.
v.
STATE of Mississippi.
No. 07-KA-59138.
Supreme Court of Mississippi.
August 1, 1990.
*1202 Edward C. Fenwick, Jackson & Fenwick, Kosciusko, for appellant.
Mike C. Moore, Atty. Gen., Jack B. Lacy, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
Granville Murphy, Jr. was indicted by a Choctaw County Grand Jury for business burglary. He was subsequently convicted on this charge by a jury and sentenced to five years in the custody of the Mississippi Department of Corrections. He properly filed a Motion for JNOV, but it was denied. He now appeals to this Court assigning two errors:
I. THE COURT ERRED IN FAILING TO GRANT A JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE A NEW TRIAL BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. THE TRIAL COURT ERRED IN FAILING TO GRANT INSTRUCTION D-4 WHICH PRESENTED THE DEFENDANT'S THEORY OF THE CASE.
We find merit in both and thereby reverse and render.

STATEMENT OF THE FACTS
At approximately 3:30 p.m. on Friday, October 16, 1987, Claude King, foreman of the sawmill at Marshall and Henderson, Inc. [M & H Company] in French Camp, Mississippi, called it a day and locked up the mill shed. In this shed were two power saws belonging to the business. When he returned to work the following Monday *1203 morning at approximately 6:00 a.m., King discovered that a plywood covering for a broken window of the mill shed was lying on the floor. The door was still locked, but the power saws were gone. At trial he identified the saws recovered by law enforcement personnel as those that were once in the shed.
Gene Thomas testified that on Friday, October 16, 1987, at approximately 7:00 p.m. Murphy came by his house and asked him to go to the store with him. They stopped at the home of Preston Assop which is located approximately 150 yards from M & H Manufacturing. Thomas did not notice any chain saws on the back seat of the car. Murphy told Thomas to get out of the car because he had something to do and did not want Thomas to be involved. Thomas waited for about an hour for Murphy's return. When he returned, Murphy had two power saws in the car. They then went to Murphy's girlfriend's home in Ethel where Murphy took the saws.
Mary Griffin, Murphy's girlfriend, testified that she discovered a chain saw in her storage room on Saturday, October 17. When she asked Murphy to whom it belonged, he told her that it was his, but he did not say where he had gotten it.
Murphy used the saws on Saturday to cut firewood. On Sunday, he approached Charles Pender about selling the saws. On the advice of Mr. Charles Whitfield, Murphy told Pender that he had gotten the saw from a cousin, so that Pender would not think that he had stolen it. Pender testified that he knew Murphy and that shortly after October 16, he bought a chain saw from Murphy for $80. Pender stated that he thought Murphy told him that he had gotten the chain saw from a cousin. He was unable to identify the saw he purchased from the state's exhibits, both Pioneer P42 chainsaws.
Regarding the second saw, Murphy stated that Whitfield told him that he knew someone [Fair] who was willing to buy a power saw. They looked for James Fair but were unable to find him, so Murphy kept the saw a few more days. On October 24, Fair paid $100 for the saw. Murphy told Fair that he had gotten the saw from his cousin. Each time Fair attempted to talk about Murphy's cousin and what business he was involved, Murphy became evasive and would change the subject. He identified one of the exhibits as the saw he bought from Murphy. In addition, Fair denied that Murphy said he found the saw.
The state's final witness, Mike Hutchinson, the newly-elected sheriff of Choctaw County, testified that he recovered a chainsaw from Pender.
The State rested its case, and Murphy moved for a directed verdict, but the trial court denied his motion. The defendant then testified in his own behalf.
Murphy said that on October 16, he was sitting at home waiting for his girlfriend. At approximately 5:00 p.m., they left in his truck and went to his mother's house where they played cards and drank. He remained at his mother's until 8:30, when he and Thomas left to go to the store to get more beer. At Thomas' request, Murphy took him to Assop's house and Murphy continued on to the store. While returning from the store, Murphy stopped at a garbage dump to look for cans to sell. While at the dump, Murphy found two chainsaws in two plastic sacks located behind the dumpster. He figured this was his lucky day. He got them and put them in his truck. These were the same chainsaws that were in evidence.
Murphy returned to pick up Thomas, and they went back to Murphy's mother's house. They remained there until 10:30 or 11 o'clock when they went to Griffin's home. Murphy put the chainsaws in the storage room.
Murphy denied breaking into the M & H Company. On cross-examination, the prosecutor emphasized that the chainsaws were found in plastic trash bags. Moreover, the prosecution pointed to the fact that Murphy had testified that one of the chainsaws cranked and ran without any trouble, and after cleaning the carburetor of the second one, it cranked.
The defense rested, and the jury convicted Murphy of burglary.

*1204 PROPOSITION I

THE COURT ERRED IN FAILING TO GRANT A JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE A NEW TRIAL BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE

DISCUSSION OF LAW
Murphy was indicted under § 97-17-33 MCA (1972) which states in part: "Every person who shall be convicted of breaking and entering ... any shop, store ... or other building ... with intent to steal therein, or commit any felony ... shall be convicted of burglary."
The crime of burglary has two essential elements, the unlawful breaking and entering and the intent to commit some crime once entry has been gained. Ashley v. State, 538 So.2d 1181, 1183 (Miss. 1989); Mack v. State, 481 So.2d 793, 795 (Miss. 1985); Winston v. State, 479 So.2d 1093, 1095 (Miss. 1985). It goes without saying that in this case the state had the burden of proving that Murphy unlawfully went into the mill shed and either stole the chain saws or had the intent to steal them.
The state could rely on circumstantial evidence, but where a case is based wholly on circumstantial evidence, the state must prove Murphy's guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. Steele v. State, 544 So.2d 802, 808 (Miss. 1989) (emphasis added); Leflore v. State, 535 So.2d 68, 70 (Miss. 1988); Montgomery v. State, 515 So.2d 845, 848 (Miss. 1987). This burden of proof is heavier than when direct evidence is offered. See, e.g., Pharr v. State, 465 So.2d 294, 301 (Miss. 1984) (where there is substantial evidence the state is given the benefit of all favorable inferences and as long as reasonable men in the exercise of impartial judgment might reach different conclusions then a motion for jnov should be denied); see also, McFee v. State, 511 So.2d 130, 133-4 (Miss. 1987); Davis v. State, 510 So.2d 794, 796 (Miss. 1987).
This Court has provided this additional burden in circumstantial cases because, as we have often repeated:
It is fundamental that convictions of crime cannot be sustained on proof which amounts to no more than a possibility or even when it amounts to a probability, but it must rise to the height which will exclude every reasonable doubt; that when in any essential respect the state relies on circumstantial evidence, it must be such as to exclude every other reasonable hypothesis than that the contention of the state is true, and that throughout the burden of proof is on the state. It is our duty here to maintain these principles.
Steele, 544 So.2d at 808 (emphasis added); see also Hester v. State, 463 So.2d 1087, 1093 (Miss. 1985).
Accepting the evidence in the light most favorable to the state, including all reasonable, favorable inferences, as we must, the circumstances support the state's hypothesis  that Murphy burglarized M & H Company. But, mere support for the state's hypothesis in a case based entirely on circumstantial evidence is not enough, for it must be of such quality as to rise to the level of excluding every other reasonable hypothesis other than that of guilt.
We have discussed this principle in prior cases. In Wooldridge v. State, 274 So.2d 131 (Miss. 1973), for example, we reversed the defendant's burglary conviction. The facts of that case indicate that a burglar alarm "sounded" at approximately 2:00 a.m. When the bank president arrived at the bank, he discovered the lock on the front door knocked off, and the burglar alarm wire had been cut. He then notified the police. Id. at 132. A witness saw the defendant's car parked near the bank at approximately 1:15 a.m. The defendant and a companion were arrested later that morning at approximately 9:40. Two other suspects were also arrested. Id. Because the case was decided on the question of sufficiency of evidence, we noted the following:
(1) No one saw Wooldridge at or in the vicinity of the bank;

*1205 (2) no fingerprints of Wooldridge were discovered at the bank;
(3) there was no loot or stolen goods from the bank found in either vehicle, although a large quantity of tools commonly used by burglars was found in the Oldsmobile of Wooldridge;
(4) said tools were not shown to have been used in the burglary;
(5) there was no direct evidence of any kind linking Wooldridge with the burglary of the bank.
Id. at 133.
This Court concluded that there was no evidence that put the defendant inside the city on the night of the burglary. Moreover, there was no evidence that showed that the defendant was in or at the bank at anytime. In addition, no evidence indicated that he aided and abetted anyone else in the commission of the burglary. Consequently, when the state rested its case, there still remained a reasonable hypothesis other than that Wooldridge burglarized the bank. Id.
Shepherd v. State, 403 So.2d 1287 (Miss. 1981), is also instructive. In Shepherd a Western Auto store was burglarized and more than $700.00 worth of property, consisting of knives and other personal property, was stolen. Id. at 1287-288. During the same evening of the burglary, two police officers noticed the defendant's truck parked in an alley near a washerteria approximately 200-300 yards from the store. Id. at 1288. One of the officers discovered the defendant behind the truck. He had a new knife, which was the same brand as those stolen, but he told the officer he had bought it in Mobile. In addition, he explained to the officer that he was there to wash his clothes, but the officer testified that he saw no clothes. Id.
While investigating the then discovered burglary the following day, the police chief found numerous knives, which had been stolen, at the side of the washerteria. Id. Some were wrapped in a shirt, and others were thrown around on the outside of the building. The officer, who, on the previous night, had discovered the defendant, was with the chief when he found the knives.
Later, the officers took a statement from the defendant's brother, and he stated that the shirt that the officers had found was, "one that my brother, Danny, had wore [sic]." Id. At trial, however, the brother denied that it was the same shirt. Moreover, no one testified that the defendant was wearing the shirt the day of the crime or whether he had a shirt on when he was seen on the night of the crime. Id. In reversing we emphasized that "[c]ourts cannot permit a conviction to stand based merely upon suspicion." Id. See also, Rankin v. State, 214 So.2d 811, 813 (Miss. 1968) (record is wanting in proof of breaking, an essential element of the crime charged); see Rawls v. State, 513 So.2d 942 (Miss. 1987); Smith v. State, 523 So.2d 1028 (Miss. 1988).
Now, turning back to the case sub judice, the state's case relies solely upon the inference of guilt based upon Murphy's possession of the chainsaws. Nowhere in the evidence did the state prove that it was Murphy who went into the shed and stole the chainsaws.
The evidence only shows that on a Friday afternoon, the building containing two chainsaws was locked at the close of business. Several hours later Murphy was in the area and he came into possession of the chainsaws that were in the building. During the weekend he made arrangements to sell the chainsaws, and he eventually sold them. When the foreman returned to work the following Monday morning, he discovered that the building had been broken into and that two chainsaws were missing. These were the same saws that Murphy had sold to Pender and Fair.
Since there was no evidence  eye-witnesses, fingerprints, footprints, etc.  linking Murphy to the breaking and entering of the building, some other hypothesis may still be true. Cf. Leflore, 535 So.2d 68, 69 (Miss. 1988) (fingerprints and button taken from scene linked to defendant); James v. State, 77 Miss. 370, 372, 26 So. 929 (1900) (only evidence against the appellant was that he had stood within ten feet of the crime scene, and departed immediately *1206 after his employer had discovered the burglary; therefore, could not be a conviction for burglary); see also, Steele, 544 So.2d 802.[1] For example, maybe someone else broke into the shed, stole the chainsaws, and took them to the dump with the intent to return later to retrieve them. Later could mean that same evening, during the weekend, the near future or sometime down the road. Before the individual or individuals returned for the saws, however, Murphy was "lucky" enough to find the saws.
The State's proof was not enough. It established nothing more than a probability of guilt. This probability was not enough in light of the fact that it did not exclude every other hypothesis. Mere possession of stolen articles, by itself, is not enough to convict a person for the crime of burglary.[2] Consequently, there is no evidence, satisfying the beyond a reasonable doubt and exclusion of every reasonable hypothesis consistent with innocence burden of proof, linking Murphy to the burglary of M & H Company.[3]
Therefore, we must reverse; but before we do so, we must discuss the appellant's second assignment.

PROPOSITION II

THE TRIAL COURT ERRED IN FAILING TO GRANT INSTRUCTION D-4 WHICH PRESENTED THE DEFENDANT'S THEORY OF THE CASE
Instruction D-4 reads:
The Court further instructs the jury that if you find from the evidence that the Defendant, Granville Murphy, Jr., did not break and enter a certain building called and being the Mill Shed, the property of Marshall and Henderson, Inc. in Choctaw County, Mississippi, but that Granville Murphy, Jr. found said chain saws at a garbage dumping site in Choctaw County, Mississippi, then you shall find the defendant not guilty of burglary.

DISCUSSION OF THE LAW
A defendant is entitled to have an instruction on his theory of the case. Young v. State, 451 So.2d 208, 210 (Miss. 1984); see also U.S. v. Conroy, 589 F.2d 1258, 1273 (5th Cir.1979), cert. denied, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979). There is a limitation, however, because a trial judge may refuse an instruction which incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions. U.S. v. Robinson, 700 F.2d 205, 211 (5th Cir.1983), appeal after remand 713 F.2d 110, reh. den. 719 F.2d 404, cert. den. 465 U.S. 1008, 104 S.Ct. 1003, 79 L.Ed.2d 235 (1984).
Instruction D-4 properly states the law, and there is a sufficient foundation for *1207 it in the evidence. In addition, contrary to what the state argues, the instructions that were provided to the jury do not incorporate Murphy's theory of the case (ie., his theory is not stated elsewhere in the instructions). Even when the instructions are read as a whole, Murphy's theory of the case remains unrevealed. Moreover, the latitude allowed by the instruction on the exclusion of every reasonable hypothesis is not enough to strike Murphy's proposed instruction on his theory of the case. Simply put, when a defendant's instruction is the proper statement of the law and is the only instruction that presents his theory of the case, it should be granted. Sayles v. State, 552 So.2d 1383, 1390 (Miss. 1989).
Furthermore, we disagree with the state because it insists that Murphy's proposed instruction would have the effect of peremptorily instructing the jury to disregard the testimony of all the witnesses except King. This conclusion is erroneous because the instructions are still read as a whole, and it is the jury's discretion to accept either interpretation of the facts that it believes. Without this instruction, the state, using its argument, compels the jury to accept all of its instructions and believe all of its witnesses thereby peremptorily instructing the jury to disregard Murphy's testimony.
As a consequence of the above discussions, it follows that the judgment of conviction should be reversed and Murphy discharged.[4]
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
BLASS, J., HAWKINS, P.J., and PITTMAN, J., dissent.
BLASS, Justice, dissenting:
 He did not wear his scarlet coat
 For blood and wine are red,
And blood and wine were on his hands
 When they found him with the dead.
Admittedly, this quotation from Wilde's "Ballad of Reading Gaol" does not fit the facts of this case with absolute precision, but the defendant here would do well to have as little to do with chain saws as possible until this case is mere history and the officers who investigated it have abandoned police work and gone into some other profession or employment.
The proof shows that Murphy drove to within about 150 yards of the burglarized shop in the middle of the night; put his friend out saying that he, the defendant, had something to do that he did not want his friend to be involved in; left for a little while; returned with two chain saws on the back seat; took them to his girlfriend's house and hid them; later sold them and lied about where he had gotten them. The facts show that the saws were left by their owner near the place where the defendant let his friend out that night. The building was broken into that night and the saws were taken from that building. The majority opinion holds that, upon this proof, no reasonable juror could find the defendant guilty of burglary. Blood and wine or chain saws, the evidence is damning! There is ample evidence to support the verdict of guilty on the charge of burglary brought in by the jury. See Toncrey v. State, 465 So.2d 1070 (Miss. 1985); Rushing v. State, 461 So.2d 710 (Miss. 1984).
We have a number of decisions, a non-exhaustive list follows, which discuss the deference we are required to accord the findings and verdict of the jury. There is no way the majority holding can be squared with our case law. Benson v. State, 551 So.2d 188 (Miss. 1989) (Factual dispute over element of fear necessary in robbery and identification of assailant was properly resolved by jury.); Jackson v. State, 551 So.2d 132 (Miss. 1989) (Evidence was legally sufficient to support jury verdict finding defendant guilty of manslaughter of his wife. Limited scope of review is premised on a candid recognition that the jury system is at best the least imperfect method of determining guilt or innocence.); White v. State, 532 So.2d 1207 (Miss. 1988) (This court will not set aside a conviction without *1208 concluding that the evidence taken in the most favorable light could not have supported a reasonable juror's conclusion that the defendant was guilty beyond a reasonable doubt.); McFee v. State, 511 So.2d 130 (Miss. 1987) (Presence of hair, having the same characteristics as defendant's hair, on deceased rape victim and evidence of trauma consistent with forcible sexual intercourse was sufficient evidence to place jury's verdict beyond this court's authority to disturb.); Gavin v. State, 473 So.2d 952 (Miss. 1985) (Record was sufficient to support conviction over claim of self-defense. To set aside a jury verdict, the facts and inferences must point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty.); May v. State, 460 So.2d 778 (Miss. 1984) (Evidence was sufficient to support verdict of manslaughter despite evidence of abuse and mistreatment of defendant by victim. Once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.)
As to the jury instruction argument, it is wholly without substance. There is no rule which requires the judge to simply take the defendant's testimony and put it in the form of an instruction. Here, if the jury believed the testimony of the defendant there was no way they could bring in a guilty verdict under the other instructions the court had given. If the jury had believed the defendant's story they would have had to believe that he was not guilty. The defendant's proposed instruction would have added nothing to the information the jury had or needed.
I WOULD AFFIRM.
HAWKINS, P.J., and PITTMAN, J., join this opinion.
NOTES
[1] But cf. McLain v. State, 198 Miss. 831, 24 So.2d 15 (1945) (thumbprint alone was not sufficient to establish specific and definite crime of grand larceny); see also Wooten v. State, 513 So.2d 1251 (Miss. 1987) (fingerprint evidence alone will not suffice to support conviction, but when coupled with evidence of other circumstances that may be enough evidence).
[2] The dissent relies on two cases insisting that possession is enough to convict for burglary. Those cases, however, are inapposite and are distinguishable from the case sub judice.

In Toncrey v. State, 465 So.2d 1070 (Miss. 1985), for example, the burglary victim, after receiving a telephone tip, approached the defendant about items that he might have for sale. Id. at 1071. When the defendant produced the stolen items, the victim attempted to restrain him, but he "slipped free and fled." Id. When he was finally arrested and questioned about the burglary, the defendant stated that he did not wish to discuss the burglary, but that "if the charges were dismissed, he could locate some of the stolen items." Id. Finally, the defendant refused to put on any evidence to support a defense. It was against this backdrop that this Court affirmed his conviction.
In Rushing v. State, 461 So.2d 710 (Miss. 1984), also relied on by the dissent, "the narrow question presented by [the appellant was] whether or not possession of stolen property one month after the burglary is `recent' under Mississippi law, so as to give rise to a presumption of guilt on the part of the accused." Id. at 712. We affirmed the defendant's conviction and held that the state, in order to receive the benefit of this inference, has the burden of proving possession by the accused of stolen property to have been personal, recent, unexplained, and exclusive. Id. (emphasis added). Here again, the defendant presented no evidence on his behalf.
[3] This appears to be one of the cases with which the majority in Pennock v. State was concerned when expressing its desire for the Legislature to rework all theft and misappropriation crimes. See 550 So.2d 410, 413, n. 5 (Miss. 1989).
[4] We do not address the sufficiency of evidence as to possession of stolen goods.