# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-KA-00203-SCT

*ROBERT TRIPLETT A/K/A CLEVELAND TRIPLETT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/22/93 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER, JR. |
| COURT FROM WHICH APPEALED: | CHOCTAW COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICHARD BURDINE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DIERDRE MCCRORY |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 3/21/96 |
| MOTION FOR REHEARING FILED: | 4/4/96 |
| MANDATE ISSUED: | 5/30/96 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Robert Triplett, a/k/a Cleveland Triplett, was convicted in the Circuit Court of Choctaw County for the sale of cocaine and was sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections. Aggrieved, Triplett appeals to this Court citing three issues, two of which are without merit and the remaining issue warranting discussion. Triplett questions whether the trial court erred by not granting Instruction D-1. After thorough consideration, we find that the trial court had previously granted instructions adequately covering the law as should be applied to the facts of this case and was not required to give repetitious instructions such as D-1. We must affirm the trial court.

## STATEMENT OF FACTS

¶2. On November 12, 1991, agent Kary Ellington, a member of the North Central Narcotics Task Force, while conducting undercover drug operations in Choctaw County and after receiving information from a confidential informant, Sterling Gates, arranged a "pre-buy" de-briefing meeting with Gates. Gates advised Ellington that they could purchase drugs from Lewis Price. Gates left and returned thereafter with Price. Ellington asked Price where he could "get some drugs," and Price replied that "he would have to go make a phone call at the Four-Way Stop."

¶3. All three individuals then proceeded to this location where Ellington observed Price making a telephone call which Ellington could overhear Price's conversation. Ellington stated that Price "asked to speak to Cleveland and told Cleveland that he needed a package and that he might be there to get the package and he might not."

¶4. Ellington and Price got back into Ellington's vehicle and along with Gates traveled to Triplett's home in McCool. Upon arrival, Price asked Ellington how much he wanted and Ellington told him a fifty cent piece, meaning "an amount of cocaine about as big as a pea gravel worth approximately fifty dollars." Price inquired, "What am I going to get out of this?" Ellington offered to give him ten dollars. Ellington handed Price the fifty dollars plus the ten dollars agreed upon. Triplett met Price at the door and the two men "exchanged" something. Ellington drove down the street, turned around and returned to Triplett's house. Price returned to the vehicle and upon entering it handed Ellington a rock of cocaine and asked him whether it was worth fifty dollars.

¶5. Ellington compiled his field notes concerning the sale. At trial, the substance was identified and authenticated through crime lab tests as crack cocaine. Gates corroborated Ellington's testimony, confirming that he too observed Price reach his hand out to Triplett and give Triplett something and that Triplett gave Price something in exchange. Gates agreed that Price gave Ellington a rock of cocaine upon returning to the car.

¶6. Lewis Price, who was also charged with the sale of cocaine from this same incident, testified that Gates approached him about obtaining drugs and that he indicated he could get some drugs. Price telephoned Triplett who advised him that he had some drugs for sale. Price admitted he obtained the substance from Triplett and gave it to Ellington. Price claimed he purchased the cocaine while inside Triplett's trailer. On cross-examination, Price admitted that he had sent word to Triplett through Janet Howell to tell Triplett to run because he (Price) had to go to court. When asked why he sent Triplett the message to run, Price responded, "Because I was going to tell the truth in court."

¶7. Triplett testified that he had not sold drugs to Price. He admitted Price had telephoned him on one occasion and asked if he knew where Price could obtain drugs, but Triplett replied that he did not know where drugs could be obtained. Triplett stated that later, Price appeared at his house, but again, he informed Price that he did not sell drugs. Triplett testified that Price told him during the telephone conversation that, "Well, I've got these guys here and they want to buy some drugs . . . And he said, well, I'm coming out there anyway because I'm going to play them off." When asked what Price meant by that statement, Triplett responded, "He's going to fool them." Triplett stated that Price actually entered his home for a moment, but left without any exchange of drugs.

## DISCUSSION OF LAW

### WHETHER THE TRIAL COURT ERRED BY NOT GRANTING DEFENDANT'S INSTRUCTION D-1?

¶8. Triplett requested the following jury instruction at trial:

THE COURT INSTRUCTS THE JURY FOR THE DEFENDANT, THAT IF YOU BELIEVE FROM THE EVIDENCE, OR FROM THE LACK OF EVIDENCE THAT ROBERT TRIPLETT

WAS USE [sic] AS A DECOY AND THAT LEWIS PRICE IN FACT SOLD HIS OWN DRUGS UNDER THE PRETENSE OF IT BEING ROBERT TRIPLETT TO AGENT KERY [sic] ELLINGTON AND STERLING GATES, THEN YOU THE JURY MUST FIND THE DEFENDANT ROBERT TRIPLETT NOT GUILTY.

¶9. The trial court refused to submit the instruction to the jury. Triplett argues that he was denied his constitutional right to have the jury decide his theory of the case; that Price used Triplett as a decoy so that Price could obtain additional money in making the sale. The State argues that the court's previously granted instructions already adequately covered everything legally stated in Triplett's proposed Instruction D-1.

¶10. Triplett is correct that a defendant is entitled to have his theory of the case presented in the jury instructions. *Murphy v. State*, 566 So. 2d 1201, 1206 (Miss. 1990). This also includes every legal defense asserted by the defendant even though the evidence supporting a defense may be meager. *Hester v. State*, 602 So. 2d 869, 872 (Miss. 1992).

¶**11.** However, Triplett's claim that he was prohibited from instructing the jury on his theory of the case due to the denial of Instruction D-1 is misplaced. The trial court had already granted Instructions C-1, S-1, S-3 and S-4 when the court considered and denied D-1 for the reason that the previously granted instructions adequately covered the law as should be applied to the facts of this case. The trial judge is not required to give repetitious instructions.

¶12. Instruction S-1 prohibited the jury from finding Triplett guilty unless it determined that Triplett:

> while acting in concert with, or aiding, abetting, assisting, or encouraging another, did unlawfully, wilfully, knowingly and intentionally sell, deliver, distribute or transfer Cocaine . . . to Agent Kary Ellington . . . If the State has failed to prove the [sic] any of the above listed elements beyond a reasonable doubt, then you shall find the defendant not guilty.

¶13. Instruction S-3 also instructed the jury that:

> If you believe from all of the evidence in this case beyond a reasonable doubt that ROBERT TRIPLETT a/k/a CLEVELAND TRIPLETT was present and consenting to the sell, delivery, distribution, or transfer, of Cocaine to Agent Kary Ellington, and did any act which aided, assisted or encouraged the commission of said crime, then under the law, the defendant, is a principal to the same extent as if he himself actually sold, delivered, distributed, or transferred the Cocaine directly to Agent Kary Ellington.

Instruction S-4 also contained language instructing the jury that where two or more persons engage in the commission of a felony, the acts of each are binding upon all. Thus all are equally guilty for the acts of each in committing the felony. Instruction C-1 covered the burden of proof.

¶14. The trial court "is not required to grant several instructions on the same question in different verbiage." *Johnson v. State*, 475 So. 2d 1136, 1148 (Miss. 1985). *Accord*, *Davis v. State*, 568 So. 2d 277, 280 (Miss. 1990) (holding that judges are not required to grant repetitious instructions); *Smith v. State*, 527 So. 2d 660, 665 (Miss. 1988). This Court holds that the jury was more than sufficiently instructed and the trial court properly denied Instruction D-1 as repetitive when read together with Instructions S-1, S-4 and C-1.

¶15. Triplett testified along with supporting witnesses, fully explaining to the jury his version and theory of the case, including the "decoy" claim. The jury rejected Triplett's testimony and chose instead to believe the State's witnesses: Agent Ellington, and corroborating witnesses Price and Gates. We agree with the State that the fact that the jury, adhering to Instructions S-1 and S-4 and other instructions read as a whole, obviously could not have believed and accepted the State's evidence if it also believed that Price alone had consummated the sale and delivery of the cocaine and had simply used Triplett as the decoy. This issue is without merit.

## CONCLUSION

¶16. The jury was more than sufficiently instructed and the trial court was correct in not granting Triplett's repetitive instruction. The essence of Instruction D-1 informed the jury that Triplett could not be convicted if he had nothing to do with the sale of the crack cocaine. That same meaning was conveyed by Instruction S-1 when read together as a whole with the other instructions previously granted by the trial court. There is simply no reason to reverse Triplett's guilty verdict and sentence. There is no merit to Triplett's claims and we must affirm the trial court.

**¶17. CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, P.J., PITTMAN, ROBERTS AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., SULLIVAN, P.J., AND BANKS, J.**

#### McRAE, JUSTICE, DISSENTING:

¶18. Because Triplett was denied the only instruction presenting his theory of the case to the jury, I respectfully dissent. A defendant is entitled to have his theory of the case presented in the jury instructions. *Murphy v. State*, 566 So. 2d 1201, 1206 (Miss. 1990). This includes every legal defense asserted by the defendant even though the evidence supporting a defense may be meager. *Hester v. State*, 602 So. 2d 869, 872 (Miss. 1992). "Where a defendant's proffered instruction has an evidentiary basis, properly states the law, and is the only instruction presenting his theory of the case, refusal to grant it constitutes reversible error." *Id*. at 872; *see Sayles v. State*, 552 So. 2d 1383, 1390 (Miss. 1989); *Young v. State*, 451 So. 2d 208, 210 (Miss. 1984).

¶19. In *Murphy*, the defendant was denied the following jury instruction:

The Court further instructs the jury that if you find from the evidence that the [defendant] did not break and enter a certain building called and being the Mill Shed. . . but that [the defendant] found said chain saws at a garbage dumping site in Choctaw County, Mississippi, then you shall find the defendant not guilty of burglary.

This Court held that the trial court erroneously denied this instruction since it was a correct statement of the law and the only instruction which presented the defendant's theory of the case. *Id.* at 1207. A separate instruction requiring the jury to find the defendant guilty beyond a reasonable doubt to the exclusion of

every reasonable hypothesis consistent with innocence was found insufficient to adequately present the defendant's particular theory of innocence to the jury. We concluded that "the latitude allowed by the instruction on the exclusion of every reasonable hypothesis [was] not enough" to strike the defense's requested instruction. *Id*.

¶20. Triplett was likewise denied the only instruction which presented his theory of the case -- that the cocaine was always in Price's possession, and that Triplett was used as a decoy so it would appear as if Triplett was the true dealer. The grant of instruction D-1 would have brought his theory of the case to the jury's attention during deliberations. Looking at the instructions as a whole, there is no instruction which addresses this particular theory of innocence. The majority is stretching in its conclusion that the State's instruction regarding the elements of the crime was sufficient to cover Triplett's theory of the case. The instruction on the elements of the crime and the burden of proof was simply not sufficient to relate Triplett's theory to the jury that he was merely a decoy.

¶21. Triplett's contention that Price was the true seller, and that Price merely used him as a decoy to make some additional money from the purchase, was supported by a strong evidentiary foundation. No one for the State agreed as to the location of the actual exchange of drugs. Price testified that the exchange of money and drugs occurred inside Triplett's trailer home while Agent Ellington and Gates maintained that it occurred outside on the porch. If the exchange occurred inside the trailer home, Price was the only witness for the State who actually knew what occurred. If the exchange occurred outside, Ellington and Gates did not actually observe what it was that was exchanged. Either way, it was undisputed that Price, the original target of the entire sting operation, was never searched for contraband before the alleged purchase. Triplett maintained that Price indicated over the telephone, and at the trailer home, a plan to use him as a decoy to obtain extra money for the amount of drugs sought by Agent Ellington. Everyone testified that immediately before the alleged purchase, Price asked for and received from Ellington an additional ten dollars for "locating the drugs."

¶22. The trial court erroneously denied jury instruction D-1 since it was the only instruction which submitted Triplett's theory of the case to the jury. The broad instruction regarding the burden of proof was not sufficient to instruct the jury on his particular defense. The majority is reaching to conclude otherwise. This case should be reversed and remanded to the Choctaw County Circuit Court for a new trial. Accordingly, I dissent.

**LEE, C.J., SULLIVAN, P.J., AND BANKS, J., JOIN THIS OPINION.**