BRIDGES, J., for the Court:
¶ 1. Gerry L. Smith was indicted by a Grenada County Grand Jury for commercial burglary as a habitual offender. He was subsequently convicted on this charge by a jury. The trial judge dismissed the habitual offender portion of the indictment and sentenced Smith to serve a term of seven years in the custody of the Mississippi Department of Corrections. Smith’s motion for JNOV or, in the alternative, a new trial was denied. Aggrieved, Smith appeals assigning two errors:
*1181 I. THE TRIAL COURT ERRED IN REFUSING TO GRANT A JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, A NEW TRIAL BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. THE TRIAL COURT ERRED IN REFUSING JURY INSTRUCTION D-2 WHICH PRESENTED THE DEFENDANT’S THEORY OF THE CASE.
¶ 2. After a thorough review of the briefs and record, we find no error and affirm the circuit court.
FACTS
¶ 3. At approximately 4:45 a.m. on Sunday, December 22, 1996, Ronald W. Eaton arrived at the Catfish Corner in Grenada to open the restaurant for business. As he went behind the counter to make a pot of coffee, Eaton noticed the safe was missing.
¶ 4. Responding to Eaton’s call to the Grenada Police Department was Officer William H. Deneley, Jr. A large rock had been thrown through the drive-through window to enable the perpetrator(s) to enter the restaurant some time after Eaton had closed the restaurant at 11:00 p.m. on Saturday, December 21, 1996. Eaton testified the missing safe weighed about one hundred pounds. Although Eaton had only one leg, he was able to carry the safe into the restaurant on the prosthetic. Approximately $188 in cash, deposit books, two deposit slips, a coin holder, two paper sacks, a Grenada Bank money bag upon which “Eaton’s Catfish Corner” was written, a money bag imprinted' with “The Sunburst Bank,” and a receipt from Grenada Music Company were in the safe at the time it was stolen, according to Virginia Eaton. The cash register and jukebox were damaged also. Officer Deneley opined that the jukebox had been damaged by a short pry bar based on the jukebox’s close proximity to the wall and the direction from which the tool was used.
¶ 5. On December 22, David Floyd Butler returned from work at approximately 11:10 p.m. and was approached by Gerry L. Smith, who lived in the same boarding house at 781 Martin Luther King Drive in Grenada. Smith asked Butler if he wanted to make “a quick fifty.” Butler responded, “If it’s illegal, Gerry, I don’t want to have anything to do with it.” Butler drove Smith to Cherry Street at Smith’s request. Butler testified he often gave Smith a ride because Smith did not own a car. Butler visited Smith many times at the Catfish Corner when Smith was working there.
¶ 6. A few days later, Butler heard a banging noise in Smith’s room, as though someone was tearing into a metal object. On December 27, Butler found the door to a safe outside Smith’s window. He brought it inside the house to show his landlady, Myrtle Golden, and Luther Gee, a fellow boarder.
¶ 7. Myrtle Golden testified that Gerry Smith rented a room in her house at 781 Martin Luther King Drive in Grenada for about four or five months. The layout of the house was described by Butler. Golden’s bedroom was the first bedroom on the right. Butler’s room was next. The bathroom was directly across the hall from Butler’s room. The bedrooms rented by Smith and Gee were located at the end of the hallway.
¶ 8. Golden remembered seeing Smith carrying a large box as he passed her bedroom door after she had gone to bed. Smith was grunting and leaning back as though he was having trouble carrying the box. Her bedroom door, was open and the street lights illuminated the hallway enabling her to see that it was Smith. Golden testified the box was about the same size and shape as the safe found in Smith’s room. She was not wearing her glasses, but she could see well enough to know it was Smith because he is shorter than Butler or Gee. Smith is five feet eight inches tall. Two or three days later Butler *1182 showed her the door to the safe he found beneath Smith’s window.
¶ 9. On December 27, 1996, Sgt.- Rosie Washington arrived at 781 Martin Luther King Drive in response to a call from Officer Simmons, who advised her that a safe door had been found. Sergeant Washington was aware a safe had been stolen from the Catfish Corner on December 22. When Sergeant Washington arrived, Officer Simmons, Myrtle Golden, David Butler and Gerry Smith were at the residence.
¶ 10. Butler led the officers to the location outside the house where Butler indicated he found the safe door beneath Smith’s bedroom window. Sergeant Washington testified that although it had been raining, the ground was dry and the grass was dead where the safe door was discovered. While inspecting the area, Sergeant Washington observed Smith looking at them from the window. Smith answered in the negative when asked if he recognized the safe door. Smith consented to a search of his room for the safe. The safe was found in Smith’s closet underneath dirty clothes. A blue plastic bag containing receipts, deposit tickets and money bags identified as property of Eaton was discovered on Smith’s dresser.
¶ 11. Observing from the hallway while the search was conducted by the officers, Butler testified he saw tools in Smith’s room, including a crow bar approximately two feet long, small pliers, channel lock pliers and a hammer which resembled a meat tenderizer.
¶ 12. After the safe was found, Sgt. Washington placed Smith under arrest and read Smith his rights.
¶ 13. Ron Eaton testified that Gerry L. Smith had performed carpentry work at the Eatons’ house and at the Catfish Corner. While working at the restaurant, Smith used Eaton’s tools which were located in a drawer behind the counter near the safe. Smith last worked for the Eatons on December 15, 1996. Mrs. Eaton testified that Smith had called her on two occasions the week before the burglary inquiring whether the Eatons had any work for him.
¶ 14. Fingerprints were collected from the glass of the drive-through window and filed with the original report. No comparison was made of the prints because Butler had access to the restaurant while employed there as a carpenter.
¶ 15. After the State rested its case at trial, Smith moved for a directed verdict on the basis that the State failed to meet its burden of proof. The motion was denied by the trial court.
¶ 16. Smith, testifying in his own behalf, denied breaking into the Catfish Corner and stealing the safe. On December 27, 1996, Smith was asleep when the officers came to the boarding house. After the officers showed him the safe top, he gave them permission to search his room to “see if [they could] find the other part.” Smith claimed to have no knowledge of how the safe or its contents came to rest in his room. According to Smith, someone must have placed the safe in his room to implicate Smith for the burglary. Smith had no key to lock his bedroom door and anyone could enter his room in his absence.
¶ 17. While working at the Eaton residence, Smith was the only workman and was unsupervised for the most part. At the Catfish Corner, he performed carpentry, concrete and electrical work for the drive-through window. Smith saw the safe at the restaurant. Smith testified he owned no tools and borrowed Eaton’s tools to work at the residence and restaurant. He had no explanation as to how the tools were in his room.
¶ 18. On cross-examination, Smith testified Butler lied about Smith offering to pay Butler a “quick $50,” and Golden lied when she testified that she saw Smith walking by her bedroom with a large box.
¶ 19.' The jury, after deliberation, returned a guilty verdict. Thereafter, the trial court dismissed the habitual offender portion of the indictment and sentenced *1183 Smith to serve a term of seven years in the custody of the Mississippi Department of Corrections. Smith was ordered to pay court costs and assessments in the amount of $248. Smith’s motion for a judgment notwithstanding the jury verdict or, in the alternative, for a new trial was denied. On appeal, Smith argues the verdict was against the overwhelming weight of the evidence and that the trial court erred when it refused to give Jury Instruction D-2 which set forth his theory of the case.
ARGUMENT AND DISCUSSION OF LAW
I. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT A JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, A NEW TRIAL BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 20. Although his assignment of error refers only to the weight of the evidence, Smith’s arguments go to both the sufficiency and weight of the evidence. Smith argues the circumstantial evidence presented by the State was insufficient to support a burglary conviction. Smith’s challenge to the overruled motion for judgment notwithstanding the verdict tests the legal sufficiency of the evidence supporting the verdict of guilty on each element of the offense of commercial burglary. This Court on appeal must consider all of the evidence presented in the light most favorable to the State, accepting as true the credible evidence consistent with the verdict. McFee v. State, 511 So.2d 130, 133-34 (Miss.1987). The lower court’s denial of a JNOV motion will not be reversed unless, with respect to one or more elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Id. When, as here, the State’s case is based entirely upon circumstantial evidence, the State must prove the defendant guilty beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. Rhodes v. State, 676 So.2d 275, 281 (Miss.1996).
¶21. Smith was convicted of burglary under Miss.Code Ann. § 97-17-33(1) (Supp.1998), which provides that “every person who shall be convicted of breaking and entering ... any shop, store ... or other building ... in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony, ... shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.”
¶ 22. Smith attacks the sufficiency of the evidence relying on Murphy v. State in which the Mississippi Supreme Court held that “[m]ere possession of stolen articles, by itself, is not enough to convict a person for the crime of burglary.” Murphy v. State, 566 So.2d 1201, 1206 (Miss.1990). However, in Shields v. State, 702 So.2d 380, 381 (Miss.1997), the court delineated circumstances in which the “possession of stolen articles, standing alone, may be sufficient to satisfy the beyond a reasonable doubt standard.”
¶23. In the case sub judice, Smith’s possession of the stolen articles did not stand alone to satisfy the heightened burden of proof imposed upon the State in a circumstantial evidence case. In addition to the evidence that the safe and its contents were found in Smith’s bedroom five days after the Catfish Corner was broken into and the safe was reported missing, the record reveals the following was presented:
¶ 24. Having performed renovations at the Catfish Corner, Smith testified he knew where the safe was located in the restaurant. Virginia Eaton testified Smith had called inquiring about additional work shortly before the burglary occurred. Mrytle Golden testified she saw Smith carrying a heavy box-shaped item into his bedroom late one night. Golden was un *1184 sure of the exact date, but recalled the sighting was during the period in question (between December 22 and December 27). David Butler testified Smith approached him on December 22 asking Butler if he would like to earn “a quick fifty.” Butler also testified he heard a loud noise consistent with the sound of banging metal coming from Smith’s bedroom a couple of days later, and noticed that Smith had wrapped a bloody towel around his hand. This evidence, together with Smith’s possession of the stolen safe and its contents, is sufficient to support a conviction for burglary.
¶ 25. The trial court also denied Smith’s motion for a new trial. In a motion for a new trial the weight of the evidence is challenged. Butler v. State, 544 So.2d 816, 819 (Miss.1989). Our supreme court has stated:
As to a motion for a new trial, the trial judge should set aside the jury’s verdict only when, in the exercise of his sound judgment he is convinced that the verdict is contrary to the substantial weight of the evidence; this Court will not reverse unless convinced the verdict is against the substantial weight of the evidence.
Id. (quoting Russell v. State, 506 So.2d 974, 977 (Miss.1987)).
¶ 26. The jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed. McClain, 625 So.2d at 781. As to matters upon which the evidence was in conflict, the court should assume that the jury resolved the conflict in a manner consistent with the verdict. Gossett v. State, 660 So.2d 1285,1294 (Miss.1995).
¶ 27. Here, the jury heard Smith’s hypothesis that someone secreted the stolen safe in his closet unbeknownst to him. Because he could not lock his bedroom door, anyone had access to his room whenever Smith was not at home. Smith denied throwing the rock through the drive-through window to gain entry into the restaurant to steal the safe. Clearly the jury was presented with conflicting theories and as such “is the judge of the weight and credibility of the testimony and is free to accept or reject all or some of the testimony given by each witness.” Meshell v. State, 506 So.2d 989, 992 (Miss.1987). The jury considered the conflicting testimony, believed the State’s witnesses, and convicted Smith.
¶28. We cannot conclude that the evidence presented to the jury was such that reasonable and fair-minded jurors could only find the accused not guilty nor is it evident that the evidence was so insufficiently weighted as to require a new trial. This assignment is without merit.
II. WHETHER THE TRIAL COURT ERRED IN REFUSING JURY INSTRUCTION D-2.
¶29. When reviewing the submission or omission of jury instructions, this Court reviews the “instructions as a whole, with no one instruction taken out of context.” Heidel v. State, 587 So.2d 885, 842 (Miss.1991). A defendant is entitled to have an instruction which states his theory of the case within limits. Murphy v. State, 566 So.2d 1201, 1206 (Miss.1990). “[A] trial judge may refuse an instruction which incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions.” Id.
¶ 30. According to Smith, the trial court erroneously refused Instruction D-2 because “[t]he testimony of the Defendant and the theories pursued on cross-examination indicate that [someone other than Smith placed the safe in Smith’s room] is a distinct possibility.” Instruction D-2 reads:
You are instructed that if you find from the evidence that the Defendant, Gerry L. Smith, did not break and enter a certain building known as, called, and being Catfish Corner, the property of Ron Eaton, in Grenada County, Mississippi, but that someone else placed the *1185 safe and other items in the Defendant’s room, then you shall find the Defendant not guilty of burglary.
¶ 31. The State argues Smith’s theory of the ease was adequately presented in Instruction S-l, the elements-of-the offense instruction. Triplett v. State, 672 So.2d 1184 (Miss.1996). Instruction S-l provides:
The defendant, GERRY L. SMITH, has been charged by an indictment in this case with the crime of Commercial Burglary.
If you find from all the evidence in this case beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence that:
1. The Catfish Corner is a building located at 1817 Sunset Drive, Grenada, Mississippi, and was the property of Ron Eaton; and
2. On or about December 22, 1996, the defendant, GERRY L. SMITH, broke into and entered the Catfish Corner; and
3. Goods, merchandise, equipment or valuable things were kept in the building for use, sale or deposit; and
4. The defendant committed the crime of larceny once inside the building; then you shall find the defendant guilty of Commercial Burglary.
If the State has failed to prove any one or more of the above elements beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence, then you shall find the defendant not guilty of Commercial Burglary.
¶ 32. Moreover, the court instructed the jury in Instruction D-3 that “mere possession of stolen articles, by itself, is not enough to convict a person for the crime of burglary.” Thus, both Instructions D-3 and S-l charged the jury to determine whether the State proved beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence that Smith broke into and entered the Catfish Corner. Here, if the jury believed Smith’s testimony, they would have returned a not guilty verdict under instruction S-l and the other instructions the court had given. To give Instruction D-2 would have been redundant. Edwards v. State, 594 So.2d 587, 593 (Miss.1992).
¶ 33. The inference in D-2 that “someone else placed the safe and other items in the Defendant’s room” was without evidentiary basis. Catchings v. State, 684 So.2d 591, 596 (Miss.1996). Further, even if “someone” other than Smith had placed the stolen items in Smith’s room, that “someone” could have been Smith’s accomplice in the commission of the burglary, in which case Smith would be guilty of burglary. Miss.Code Ann. §§ 97-1-3 and 97-1-5 (Rev.1994).
¶ 34. We find Instruction D-2 was properly refused inasmuch as the instruction “incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions.” Murphy, 566 So.2d at 1206.
¶ 35. This issue is without merit.
¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF GRENADA COUNTY OF CONVICTION OF COMMERCIAL BURGLARY AND SENTENCE OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SENTENCE IMPOSED TO RUN CONSECUTIVELY TO SENTENCE PREVIOUSLY IMPOSED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GRENADA COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.