KING, JUSTICE,
DISSENTING:
¶ 22. Because I believe the State proved only the possibility of Ceasar Johnson’s guilt and failed to exclude all reasonable hypotheses consistent with his innocence, I dissent.
¶ 23. The critical inquiry when considering whether the evidence is sufficient to sustain a conviction is whether the evidence shows “beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” Bush v. State, 895 So.2d 836, 843 (Miss. 2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss. 1968)). “The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct 2781, 61 L.Ed.2d 560 (1979)). If the facts and inferences “ ‘point in the favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,’ the proper remedy is for the appellate court to reverse and render.” Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss. 1985)).
¶ 24. Because this case does not involve a confession and because no physical evidence or eyewitness testimony was presented linking Ceasar to Greg Johnson’s murder, this case is entirely one of circumstantial evidence. Circumstantial evidence is evidence “which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist.” McInnis v. State, 61 So.3d 872, 875 (Miss. 2011) (quoting Keys v. State, 478 So.2d 266, 268 (Miss.1985)). “The State could rely on circumstantial evidence, but where a case is based wholly on circumstantial evidence, the [S]tate must prove [the defendant’s] guilt beyond a reasonable doubt and to the exclusion of all reasonable hypotheses consistent with innocence.” Murphy v. State, 566 So.2d 1201, 1204 (Miss. 1990) (emphasis in original). The burden in a purely circumstantial-evidence case is heavier than the burden in a direct-evidence case. Id. The trial court gave a circumstantial-evidence jury instruction and a two-theory instruction.[5]
¶ 25. Put differently, because the State presented no direct evidence, the State must have proven Ceasar’s guilt to the exclusion of all reasonable hypotheses consistent with his innocence. Previously, in Murphy, this Court reversed the defen *73 dant’s burglary conviction after determining that the State’s evidence established, nothing more than a probability of guilt. Murphy, 566 So.2d at 1206. Although the State had proven that two stolen chainsaws had been in the defendant’s possession, the defendant argued that he had not stolen the chainsaws but had found them in plastic bags behind a dumpster. Id. at 1208. This Court found that the State had failed to exclude the reasonable hypothesis that someone else had broken into the shed and stolen the chainsaws. Id. at 1206. •
¶ 26. Similarly, in Steele, the defendant’s capital-murder conviction was reversed after this Court determined that the evidence did not link the defendant with the victim’s injury. Steele v. State, 544 So.2d 802, 808 (Miss. 1989). The State had proven that the defendant likely had burned with a hair dryer a young girl he was babysitting and that the young girl probably had not sustained her head injury by falling off her bed. Id. at 809. However, the State failed to prove that the burns were not inflicted by someone else or that the girl did not fall while jumping on her bed. Id. This Court stated, “[t]he problem in this case is that the evidence ‘merely establishes some finite probability in favor of the state’s hypothesis.” Id.
¶ 27. The Hester Court also reversed the defendant’s capital-murder conviction, finding that the State had failed to exclude the reasonable hypothesis that a third party had been the victim’s assailant. Hester v. State, 463 So.2d 1087 (Miss. 1985). The victim was stabbed to death in a wooded area that had been covered with leaves-after leaving the bar with the defendant, and the defendant had returned to the bar alone in an upset and disheveled condition. Id. at 1092. However, because the State presented no evidence linking the defendant with a knife found at the defendant’s house and failed to overcome the reasonable hypothesis that someone else had robbed and stabbed the victim, the defendant’s presumption of innocence prevailed. Id. at 1093-94. And in the Sanders case, a sixteen-month-old girl was found starved to death in a room to which the defendant had. the only key. Sanders v. State, 286 So.2d 825 (Miss. 1973). Yet this Court reversed the defendant’s conviction after the State failed to rebut the reasonable hypothesis that someone else had locked the girl in the room. Id. at 829.
¶ 28. Similarly here, I believe the State failed to rebut the reasonable hypothesis that someone else killed Greg. While the State presented evidence showing that Ceasar could have murdered Greg, as this Court previously has emphasized, “[i]t is fundamental that convictions of crime-cannot be sustained on pioof which amounts to no more than a possibility or even when it amounts to a probability.” Murphy, 566 So.2d at 1204 (emphasis in original) (citations omitted). For conviction, evidence of Ceasar’s guilt “must rise to the height which will exclude every reasonable doubt; that when in any essential respect the state relies on circumstantial evidence, it must be such as to exclude every other reasonable■ hypothesis than that the contention of the state is true, and -that throughout the burden of proof is on the state.” Id. (emphasis in original). As testimony indicates, a reasonable hypothesis consistent with Ceasar’s innocence is that Ceasar was not at J.Y. Trice Apartments when Greg was murdered and that someone else murdered Greg.
¶ 29. The majority first states that the State presented evidence that Ceasar had planned to rob Greg. Christopher McKenzie, an admitted cocaine addict, testified that he was not friends with Ceasar at all. McKenzie testified that, in reference to Ceasar, “Like I say I may—I know him, but I don’t—didn’t know him know him. ... I know him, but I didn’t know him *74 very' well at the time.” He testified that one night, probably a week or two before Greg was murdered, he heard Ceasar talking to two other men about robbing Greg.[6] McKenzie had not been in the same room as the three men when he overheard the conversation and stated that' there had been a wall between him and the others. He testified that all three men had been talking about robbing different people. At' the time he testified that he had overheard Ceasar, McKenzie had just bought cocaine and he stated that he was “fixing to get high.” His statement to the police said that' he had been in the laundry room “getting high” when he overheard the. conversation. At trial, McKenzie admitted that he had been smoking crack when he stated he heard Ceasar say this.[7] Even if McKenzie’s testimony was accurate, his statement does not link Ceasar to Greg’s murder, Ceasar was not charged with robbery and no evidence was presented that Greg had been robbed that night.
¶ 30. The majority also states that Cea-sar had been with Devenje Edwards, his girlfriend at the time, previously that night at the laundromat and that “Ceasar did not tell her where he was going afterwards that night.” Yet the failure to inform one’s girlfriend of what one intends to do is not evidence supporting murder.
¶ 31. Kiadric Scott testified that on November 1, 2012, he had been at J.Y. Trice Apartments “way before it got dark” and that he had seen Greg and Ceasar there together. He stated that Greg had been “backed up there all the time, just chilling.-” Although Scott testified that it was earlier in the day when he had seen the two together, Scott had given a statement to investigators that he had just gotten his hair fixed at J.Y. Trice Apartments when he saw Greg and Ceasar parked in thé same parking spot where Greg was murdered at “nine going on ten” o’clock that night. Whether Scott had seen Ceasar and Greg-around “nine going on ten” or earlier in the day, either time was before. Ceasar and Greg went to the Double Quick. Therefore, Scott’s testimony did not constitute evidence that Ceasar had been present at J.Y. Trice Apartments after 10:00 p.m.
¶ 32. The evidence presented also did not refute the testimony of three witnesses that Greg had dropped off Ceasar at Rosewood Apartments before he was .murdered. See Bankhead v. State, 626 So.2d 115, 119 (Miss. 1993) (“Nowhere in the record does there appear any testimony which effectively, refutes Bankhead’s version of the events that night.”). Hudson testified that Greg had, dropped off Ceasar at the Rosewood Apartments around 10:00 or 10:18 that night and that Greg had left Rosewood Apartments alone. She stated that Ceasar had received a call while on the way to Greenville that Greg had been killed and that, the family had been so upset that they had canceled their plans and turned around to get something to eat instead. Thomas corroborated Hudson’s testimony, stating- that she was with Hudson when they picked up Ceasar from Rosewood Apartments at 10:18 that night and that Greg had dropped off Ceasar and had left the apartments alone. Matthews, who was not related to Ceasar or his family, testified that she lived at Rosewood *75 Apartments and saw Ceasar get out of Greg’s car that night in .the Rosewood Apartments parking lot, Matthews stated that when she got into her car, Greg had been driving out of the apartment complex and that Ceasar had been walking to his sister’s car.
¶ 33. In contrast, the State presented no testimony or evidence that Ceasar was present at J.Y. Trice Apartments after Ceasar and Greg left the Double Quick; In fact, even taking all of the evidence presented as true, I believe the State failed to disprove the reasonable hypothesis that someone else shot Greg. See Wooldridge v. State, 274 So.2d 131, 133 (Miss. 1973).(“Assuming that everything testified to by the state witnesses is absolutely true, there still remains a reasonable hypothesis other than that Woolridge burglarized the bank ....”). Even testimony from the State’s witnesses fails to merit an inference that Ceasar was at J.Y. Trice Apartments after leaving the Double Quick. Love testified that when she looked out of the window to see whose car was parked outside her apartment, she did not see anybody in the passenger seat of Greg’s car.[8] Moreover, although Smith and Love were the first to discover that Greg had been shot, neither of them called 911 despite both having cell phones on their persons. And Smith had tested positive for a particle indicative of gunshot residue on the back of his left hand in a gunshot-residue test, despite stating that he had not held or shot a gun that day.
¶34. The majority states that “the defense did not present an alternative theory as to how Greg was murdered.” However, the defense is in no way required to present an alternative theory to how Greg was murdered. In all likelihood, the defense did not know, and could not have known, how Greg was murdered. Anybody could have shot Greg' that night between the time Ceasar and Greg left the Double Quick and the time Love flagged down Officer Honorable. The majority additionally uses the alleged intimidation of Cooper to support Ceasar’s conviction. I believe this is improper, as the witness-intimidation charges were severed and were not proven at trial. “In a criminal case the accused is protected, at every stage of the trial, with a presumption of innocence and until he is proven guilty beyond a reasonable doubt by proper and competent evidence.” White v. State, 532 So.2d 1207, 1226 (Miss. 1988) (quoting Moore v. U.S., 271 F.2d 564 (4th Cir. 1959)). An allegation should not be considered evidence, especially not evidence in support of a murder conviction.
¶ 35. Clearly, a reasonable hypothesis consistent with Ceasar’s innocence is that Ceasar was miles away from the J.Y. Trice Apartment complex, on the way to Green-ville with his family, when Greg was murdered and that someone else murdered Greg. I believe that the State proved only the possibility of Ceasar’s guilt in this case. The concept of justice would become-markedly smaller indeed if life and liberty hinged on mere possibilities. Because I believe the State failed to exclude all reasonable hypotheses consistent with Cea-sar’s innocence and that the State failed to rebut the presumption of Ceasar’s innocence, I respectfully dissent and submit that his deliberate-design-murder conviction must be overturned.
DICKINSON, P.J., KITCHENS AND COLEMAN, JJ., JOIN THIS OPINION.

. Instruction C-fIA stated: "A Defendant in a criminal case has no burden of proof whatsoever. The State of Mississippi, on the other hand, must prove beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence that the Defendant committed the acts as alleged in the indictment.” Jury instruction C-26 stated: "The Court instructs the jury that if there are two reasonable theories arising out of the evidence in this case; one tending to prove that the defendant did commit the crime as alleged in the indictment and the other tending to show that the defendant did not commit the aforesaid crime, and you are unable to determine from the evidence which of the two theories is true, the jury must accept that the theory most favorable to Caesar [sic] Johnson, III and find him not guilty.”

, In response to a question asking how long before the mur.der the conversation occurred, McKenzie stated, "I think it was like a week or two." McKenzie testified that it was at night but he did not know what time.

. The record is unclear as to how McKenzie knew that Ceasar was the one who -had talked about robbing Greg. His statement to the police does not specifically, identify Ceasar but states that "him and some of his friends" were talking and that "he’s selling drugs for ‘Little Greg,’ " McKenzie testified at trial that he was referring to Ceasar,

. The State asked Love, "Did you see anyone inside the car?” Love responded, "Yes. I saw •somebody in the driver's side.” The State asked, "Could you see the passenger side of the vehicle?” Love replied, “Yes, but I didn’t see anybody.”